IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Marcus Antonio Frierson, #247864, | ) |
|                    Plaintiff, | ) C/A No.: 5:10-03103-DCN-KDW |
| vs. | ) |
| | ) REPORT AND RECOMMENDATION |
| Ofc. Tripp; Lt. B. Haney; Ms. Burch, Mental Health; Nurse Felder-Gadson; Nurse Ms. Manigolt; IGC Ms. Jinkins; Ms. Gant, Ofc.; Ms. Conelly, Head Nurse; Ofc. Gullet; Ms. Lee, Mental Health; Ms. Chase, Nurse; Ms. James, Nurse; Ms. Paquevacc, Nurse; Ms. Andrews, Nurse; Ms. Conner, Mental Health; Ms. Gray, Mental Health, | ) |
|                    Defendants. | ) |

Plaintiff, Marcus Antonio Frierson, filed this pro se civil rights action pursuant to 42 U.S.C. § 1983. Before the court are the following: (1) Defendants' Motion for Summary Judgment[1] (ECF Nos. 41, 47); (2) Plaintiff's Motion for Temporary Restraining Order ("TRO") (ECF No. 60); and (3) Plaintiff's Motion to Order Reply (ECF No. 84). Pretrial proceedings in this case were referred to the undersigned pursuant to provisions of 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2)(d) (D.S.C.). This Order and Report and Recommendation is entered for review by the district judge.

---

[1] Defendant Carolyn Manigault (improperly identified as Nurse Ms. Manigolt) moved to join the remaining Defendants' motion for summary judgment on May 13, 2011. ECF No. 47. The court notes that Defendant Manigault's motion to join the other Defendants' motion for summary judgment is unopposed, and her filing is docketed as a motion for summary judgment. *Id.* This R&R is submitted as to the joint motion for summary judgment of all Defendants.

I. Procedural and Factual Background

Plaintiff filed his complaint in this action on December 7, 2010.[2] ECF No. 1. Defendants filed their motion for summary judgment on May 9, 2011. Pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), Plaintiff was advised of the summary judgment and dismissal procedures and the possible consequences if he failed to respond adequately to the Defendants' motion.[3] ECF No. 43. Plaintiff did not file a response by the court-ordered deadline. On June 22, 2011, the court ordered Plaintiff to advise the court as to whether he wished to continue with his case, and advised that if he failed to respond by July 7, 2011, the court would recommend dismissal. ECF No. 53. On July 8, 2011 the magistrate recommended the action be dismissed with prejudice for failure to prosecute. ECF No. 57. On July 11, 2011, Plaintiff filed a response to Defendants' motion for summary judgment. ECF No. 59. The district court remanded the case to the magistrate judge on July 25, 2011, for consideration of Plaintiff's response to the motion for summary judgment, as well as Plaintiff's Motion for TRO. Having carefully considered the parties' submissions and the applicable law, the court concludes that Defendants' motion should be granted and Plaintiff's motions should be denied.

Plaintiff complains of various conditions of confinement, and alleges they amount to cruel and unusual punishment. Specifically, Plaintiff complains of the following while he was confined at Lieber Correctional Institution ("Lieber"): (1) he was denied medical treatment for high blood pressure, denied physical therapy, and staff did not address his complaints regarding

---

[2] The court notes that Plaintiff indicated on his complaint form that he had no other lawsuits in state or federal court. However, a review of the federal court's docket indicates Plaintiff has filed 11 other actions in federal court related to his imprisonment, two of which are still pending.

[3] The court sent a second *Roseboro* order to Plaintiff after Defendant Manigault filed her motion for summary judgment. *See* ECF No. 48.

issues with medications prescribed for mental issues; (2) although he had a lung infection, he was placed in a holding cell without proper ventilation; (3) his grievances went unanswered; (4) the officers and nurses conspired against him; and (5) Defendant Lt. B. Haney falsely accused him of being an informant resulting in his assault by other inmates. Plaintiff also complains that while at McCormick Correctional Institution ("McCormick" or "MCCI") he was subjected to the following: (1) medical staff refused to see him at sick call for issues related to his medication; (2) he was not getting medication in prescribed dosages; (3) he was not provided grievance forms when requested; (4) he was refused physical therapy for his right arm; (5) Defendant Nurse Paquevacc refused to give him breathing treatments related to his lung infection; (6) he was given grits at breakfast on October 15, 2010, causing an allergic reaction that required emergency care that was not provided; and (7) he was refused visits to medical and to the law library.

II.  Standard of Review

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other

materials;" or "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. Further, while the federal court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, *see, e.g., Cruz v. Beto*, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts that set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact when none exists. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990).

III. Analysis

    A. Defendants' Joint Motion for Summary Judgment, ECF Nos. 41 & 47

Defendants contend that they are entitled to summary judgment on Plaintiff's claims because he has not exhausted his administrative remedies as required by the Prison Litigation Reform Act ("PLRA"), specifically 42 U.S.C. § 1997e(a). Section 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." This requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes,

and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). To satisfy this requirement, a plaintiff must avail himself of all available administrative remedies. *See Booth v. Churner*, 532 U.S. 731 (2001). Those remedies "'need not meet federal standards, nor must they be "plain, speedy, and effective."'" *Porter*, 534 U.S. at 524 (quoting *Booth*, 532 U.S. at 739).

Satisfaction of the exhaustion requirement requires "'using all steps that the agency holds out, and doing so *properly*[.]" *Woodford v. Ngo*, 548 U.S. 81, 90 (2006) (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002) (emphasis in original)). Thus, "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. 199, 218 (2007). Defendants have the burden of establishing that a plaintiff failed to exhaust his administrative remedies. *Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F.3d 674, 683 (4th Cir. 2005). The South Carolina Department of Correction's ("SCDC") Inmate Grievance System provides procedures for formal review of inmate complaints. Initially, an inmate may file a "Step 1 Grievance" with designated prison staff. If the Step 1 Grievance is denied, the inmate may appeal to the warden of his facility via a "Step 2 Grievance." If the inmate disagrees with the disposition of the Step 2 Grievance, the inmate may appeal to the Administrative Law Court.

The purpose of the exhaustion requirement is twofold. First, it gives an administrative agency "'an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court[.]'" *Woodford*, 548 U.S. at 89 (quoting *McCarthy v. Madigan*, 503 U.S. 140, 145 (1992)). Second, "[c]laims generally can be resolved much more quickly and economically in proceedings before an agency than in litigation in federal court." *Id.*

Any consideration of administrative remedies pursued after the commencement of the litigation would only serve to frustrate both purposes of the PLRA's exhaustion requirement. *Cf. Booth*, 532 U.S. at 738 (noting the available remedy is to be exhausted "*before* a complaint under § 1983 may be entertained.") (emphasis in original). A number of courts have recognized that the plain language of the PLRA and Supreme Court authority makes exhaustion a precondition to filing an action in federal court. *See, e.g., Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008) (noting prisoner must exhaust available administrative remedies prior to filing suit); *Medina-Claudio v. Rodriguez-Mateo*, 292 F.3d 31, 36 (1st Cir. 2002) (finding dismissal, rather than continuance was appropriate when prisoner had not exhausted available remedies because "Congress clearly made the exhaustion of remedies a necessary antecedent to filing a claim in federal court"); *Jackson v. District of Columbia*, 254 F.3d 262, 268-69 (D.C. Cir. 2001) (rejecting the argument that § 1997e(a) "permits suit to be filed so long as administrative remedies are exhausted before trial"); *Perez v. Wis. Dep't of Corr.*, 182 F.3d 532, 535 (7th Cir. 1999) (agreeing with other circuits that "a suit filed by a prisoner before administrative remedies have been exhausted must be dismissed; the district court lacks discretion to resolve the claim on the merits, even if the prisoner exhausts intra-prison remedies before judgment."). As the Seventh Circuit explained:

> Section 1997e(a) does not say that exhaustion of administrative remedies is required before a case may be decided. It says, rather, that *"[n]o action shall be brought* with respect to prison conditions . . . *until* such administrative remedies as are available are exhausted." [The prisoner] violated § 1997e(a) by filing his action. Congress could have written a statute making exhaustion a precondition to judgment, but it did not. The actual statute makes exhaustion a precondition to *suit*.

*Perez*, 182 F.3d at 534-35 (italics in original).

Here, Plaintiff's inmate record reveals he has not exhausted his administrative remedies. *See* Hallman Aff. (May 6, 2011), ECF No. 41-2. Specifically, SCDC Branch Chief for the Inmate Grievance Branch, Ann Hallman, discusses SCDC information regarding Plaintiff's potentially relevant grievances and attests to the following regarding grievances while Plaintiff was housed at Lieber:

> The Plaintiff filed grievance number LCI 1113-10 on September 25, 2010, and it was received in the grievance office on October 4, 2010. In grievance number LCI 1113-10, the Plaintiff complained about an incident where he stated that medical personnel failed to provide him proper medical care. The Plaintiff failed to state the date of the incident, but alleged that he was taken to the medical department due to a headache and difficulty breathing. He stated that his blood pressure was elevated and he was informed by one nurse that he was to wait and they would recheck his blood pressure again in 15 minutes, but Nurse Felder ordered him to leave the medical department.
>
> The Warden issued a response to grievance number LCI 1113-10 on March 11, 2011, and denied the Plaintiff's grievance at that time. The Plaintiff has filed a Step Two grievance and it is currently pending at this time.[4]
>
> The Plaintiff filed grievance number LCI 11l4-l0 on September 28, 2010, and it was received in the grievance office on October 4, 2010. In grievance number LCI 1114-10, the Plaintiff stated that he signed up for sick call on September 21, 2010, due to food allergies and high blood pressure. He stated that an unidentified nurse stated to him that Ms. Felder refused to provide him medical treatment.
>
> The Warden issued a response to grievance number LCI 1113-10 on March 11, 2011,[5] and denied the Plaintiff's grievance at that time. The Plaintiff filed a Step Two grievance and it is currently pending at this time.
>
> The Plaintiff filed no additional grievances while at Lieber.

---

[4] For purposes of Branch Chief Hallman's affidavit, "at this time," references the date she executed the affidavit, May 6, 2011. Plaintiff filed this action on December 7, 2010.

[5] Paragraph 14 of Hallman's affidavit refers again to the Warden's response to LCI 1113-10 as a response to LCI 1114-10. However, a review of the actual grievance and response forms indicates the Warden responded to LCI 1114-10 on or about March 18, 2011 (the actual date is illegible), denying Plaintiff's grievance. *See* ECF 41-4 at 2.

ECF No. 41-2 ¶ 11-15. Plaintiff was transferred to MCCI on November 10, 2010, and had filed three grievances from the time of transfer to May 6, 2011, the date of Branch Chief Hallman's affidavit. *Id.* ¶ 16. Branch Chief Hallman attests to the following regarding Plaintiff's grievances during that period:

> The Plaintiff filed grievance number MCCI 288-11 on March 19, 2011, and it was received in the grievance department on March 28, 2011. In grievance number MCCI 288-11, the Plaintiff complained that he was not receiving an adequate amount of food. There has been no response issued to the Plaintiff's grievance as of the present time.
>
> The Plaintiff filed grievance number MCCI 314-11 on March 15, 2011, and it was received in the grievance department on March 28, 2011. In grievance number MCCI 314-11, the Plaintiff again complained that he was not receiving an adequate amount of food. There has been no response issued to the Plaintiff's grievance as of the present time.
>
> The Plaintiff filed grievance number MCCI 0384-11 on April 7, 2011 and it was received in the grievance department on April 15, 2011. In grievance MCCI 0384-11 the Plaintiff complained that he is allergic to grits, and Food Service Supervisor is aware of this and is still putting grits on his tray. There has been no response issued to the Plaintiffs grievance as of the present time.

*Id.* ¶¶ 17-19. Branch Chief Hallman ends her affidavit by attesting that Plaintiff "has not exhausted the SCDC grievance process as to any of the grievances referenced above." *Id.* ¶ 20.

Plaintiff did not exhaust his administrative remedies prior to filing suit. Of the documented grievances noted by Branch Chief Hallman, only three arguably refer to allegations in Plaintiff's complaint. Plaintiff filed Step 1 grievances LCI 1113-10 and LCI 1114-10 on September 25, 2010, and September 28, 2010 respectively, but filed this lawsuit on December 7, 2010, before receiving responses from prison administrators. Two of the three grievances filed at McCormick and identified by Branch Chief Hallman are unrelated to allegations in Plaintiff's complaint. Step 1 grievance MCCI 0384-11 references Plaintiff's claim of a grits allergy (ECF

No. 41-2 ¶ 19), but Plaintiff did not file this grievance until well after the December 7, 2010 filing of his complaint.

In his response to Defendants' motion for summary judgment, Plaintiff argues that he tried to exhaust his administrative remedies but that the grievance system at Lieber, Perry, and McCormick is corrupted by staff members who destroy prisoner complaints, fail to place grievances in the grievance boxes, or fail to process grievances. ECF No. 87 at 9. Plaintiff attached a number of Grievance forms and Request-to-Staff forms to his response as evidence in support of his allegations. Plaintiff's exhibits include a Step-1 grievance appealing a conviction for soliciting an employee, grievances related to lack of access to property or legal materials, complaints regarding denial of adequate number of showers and denial of sick calls, and a request-to-staff form regarding the return of untimely filed grievances. ECF No. 87-2. All of the attached documents are dated after the filing of Plaintiff's complaint.[6] Plaintiff provides no documentation in support of the allegations in his complaint related to the denial of physical therapy, prison conditions aggravating his lung infection, or assaults by other inmates because of staff labeling him as an informant.

Plaintiff's vague and general allegations regarding the grievance process are insufficient to overcome the undisputed evidence that he has failed to exhaust his administrative remedies on

---

[6] Plaintiff argues that he asked for grievance forms, but was told none was available. In one response to Plaintiff's request, the staff member noted that "commissary HQ was out of grievance forms for a while, but more were received today." *See* ECF No. 87-2 at 15. While this response supports Plaintiff's claim, the date on the request and response was in July 2011—after the filing date of Plaintiff's complaint.

all of his claims in this complaint. Therefore, this court lacks jurisdiction over Plaintiff's claims, and all Defendants are entitled to summary judgment on all claims.[7]

B. Plaintiff's Motion for Temporary Restraining Order ("TRO"), ECF No. 60

On July 11, 2011, Plaintiff filed a document titled "Motion for restraining order & seperation [sic] from staff" and "Motion to be transfer to Level 2 Prison [sic] as Plaintiff custody states." ECF No. 60. Although that motion [hereinafter "Motion for TRO"] was filed with the civil action number assigned to this case, Plaintiff captioned the case as "Marcus Antonio Frierson v. Warden McCall, et al." *Id.* Warden McCall is not a defendant in this action. In the motion Plaintiff requests the court order his transfer from Perry Correctional Institution ("Perry") because the defendants he sued previously are "now treating him unjustly and cruel and unusual." ECF No. 60 at 1. Plaintiff also alleges that his custody level is "Level 2" but Perry is a "Level 3" facility and he should be transferred because the Level 3 inmates are trying to harm him, and there is a conflict of interest because of pending litigation. ECF No. 60 at 1-2.

As this motion appears to be unrelated to Defendants and claims in this case, the court lacks jurisdiction to rule on this motion. To the extent the motion refers to the current Defendants, Plaintiff is unable to show that he is entitled to a TRO. "[P]reliminary injunctions are extraordinary remedies involving the exercise of very far-reaching power to be granted only sparingly and in limited circumstances." *MicroStrategy Inc. v. Motorola, Inc.*, 245 F.3d 335, 339 (4th Cir. 2001) (internal quotation marks and citation omitted). "A plaintiff seeking a

---

[7] *Cf. Kornahrens v. Evatt*, 66 F.3d 1350 (4th Cir. 1995) (holding court should not "stray into other considerations" after determining habeas claim is procedurally barred); *see Karsten v. Kaiser Found. Health Plan*, 36 F.3d 8, 11 (4th Cir.1993) (finding alternative holdings should be

10

preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Res. Def. Council*, 555 U.S. 7, 20 (2008). The PLRA grants courts the authority to enter a TRO or an order for preliminary injunctive relief in civil actions concerning prison conditions; however,

> [p]reliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the preliminary relief and shall respect the principles of comity set out in paragraph (1)(B) in tailoring any preliminary relief. Preliminary injunctive relief shall automatically expire on the date that is 90 days after its entry, unless the court makes the findings required under subsection (a)(1) for the entry of prospective relief and makes the order final before the expiration of the 90-day period.

18 U.S.C. § 3626(a)(2).

Traditionally, preliminary injunctions are sought to "protect the status quo and to prevent irreparable harm during the pendency of a lawsuit ultimately to preserve the court's ability to render a meaningful judgment on the merits." *In re Microsoft Corp. Antitrust Litig.*, 333 F.3d 517, 525 (4th Cir. 2003) (abrogated on other grounds by *eBay, Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (2006) (finding presumption of irreparable harm in copyright actions inappropriate)). Mandatory preliminary injunctions, in comparison, compel action. The Fourth Circuit explained:

> "Mandatory preliminary injunctions [generally] do not preserve the status quo and normally should be granted only in those circumstances when the exigencies of the situation demand such relief." *Wetzel v. Edwards*, 635 F.2d 283, 286 (4th Cir. 1980). That is to say, a mandatory preliminary injunction must be necessary both to protect against irreparable harm in a deteriorating circumstance created by the

---

avoided).

defendant and to preserve the court's ability to enter ultimate relief on the merits of the same kind.

*Id*. at 526. Here, Plaintiff's motion for injunctive relief must fail. The types of claims Plaintiff makes are improper for relief by a preliminary injunction. Plaintiff has not demonstrated he will suffer irreparable harm because of Defendants' actions[8] or that he is likely to succeed on the merits. Therefore, Plaintiff has failed to establish the elements necessary to demonstrate the need for a preliminary injunction. Accordingly, the undersigned recommends the court deny this motion.

    C.    Plaintiff's Motion to Order Reply, ECF No. 84

On November 10, 2011, Plaintiff filed a motion seeking to have Lt. A. Madden at Perry respond to the court's text order of October 18, 2011, requiring Plaintiff be allowed access to his legal materials. *See* ECF No. 78. The text order also required Defendants to provide the court with a status report regarding SCDC officials' compliance with the order. Defendants filed a timely status report indicating compliance with the court's directive.[9] In his motion Plaintiff alleges that Lt. Madden stated he saw Plaintiff's "legal box and would bring it to Plaintiff Nov. 6th, 2011." ECF No. 84 at 1. The attached certificate of service states: "I move by and through this court for the purpose to request the court move for a violation of order (text) to follow policy by giving Marcus A. Frierson his legal box(s) that contains documents to Respond to Defendants

---

[8] While Plaintiff alleges that his "life is in danger by SCDC staff and inmates at Perry," Plaintiff has not indicated that he has submitted any formal documentation to prison officials requesting protection, and none of Defendants in this action is assigned to Perry.

[9] The parties filed additional documents related to the court's text order including: Plaintiff's Reply to Defendants' Status Report in Response to Court's Order, Entry #78 and Attachment(s) and Motion to Move for Violation of Such Text Order (ECF No. 83); and Defendants' Reply to Plaintiff's Response to Status Report in Response to Court's Order (ECF No. 86); and Plaintiff's Reply to Defendants Response to Status Report, In Response to Court's Order (ECF No. 88).

Summary Judgement [sic] Nov. 18th, 2011, Plaintiff can't respond without documents."  ECF No. 84 at 2.

Inasmuch as Defendants notified the court that prison officials provided Plaintiff access to his legal documents in accordance with SCDC policies and procedures (ECF Nos. 81 and 86); Plaintiff has presented no evidence that Lt. Madden saw Plaintiff's legal box or promised to bring it to Plaintiff; and because, despite Plaintiff's claims that he was not provided with all of his legal materials (ECF No. 87 at 9), Plaintiff filed a timely response to Defendants' motion with attachments, the court finds no violation of the October 18, 2011 text order.  Plaintiff's motion should be denied as moot.

IV.     Conclusion

For the reasons discussed above, it is recommended that Defendants' Motions for Summary Judgment (ECF Nos. 41 & 47) be granted and Plaintiff's Motion for TRO (ECF No. 60), and Motion to Order Reply (ECF No. 84) be denied and this case be dismissed in its entirety.

IT IS SO RECOMMENDED.

February 10, 2012                                              Kaymani D. West
Florence, South Carolina                                 United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**